# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **THE JAMES B. OSWALD COMPANY** d/b/a OSWALD COMPANIES, *et al* | ) ) ) | Case No. 1:22CV01107 |
| Plaintiff, | ) ) ) | Judge Charles E. Fleming |
| vs. | ) ) | Magistrate Judge Jonathan D. Greenberg |
| **DENNIS NEATE**, *et al*., | ) ) ) | |
| Defendants. | ) ) ) ) | |

---

### *PLAINTIFFS' PRE-HEARING BRIEF FOR THE DECEMBER 6, 2022 PRELIMINARY INJUNCTION HEARING*

---

Respectfully submitted,

**ZASHIN & RICH CO., L.P.A.**

*s/ Ami J. Patel*
Stephen S. Zashin (0064557) ssz@zrlaw.com
Lisa A. Kainec (0061551) lak@zrlaw.com
Ami J. Patel (0078201) ajp@zrlaw.com
Jzinae N. Jackson (0098411) jnj@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441 / F: (216) 696-1618

*Attorneys for Plaintiffs The James B. Oswald Company d/b/a Oswald Companies and JBO Holding Company*

The James B. Oswald Company d/b/a Oswald Companies and JBO Holding Company ("Oswald") filed this action against former employees Defendants Dennis Neate, Michael Maitland, Annette Blanc, Christine Podlogar Loiselle ("Individual Defendants") and their new employer and Oswald's direct competitor, Hylant Group, Inc. ("Hylant") (collectively "Defendants").  Oswald filed this action for, amongst other things, a preliminary injunction to stop all Defendants from violating (or in Hylant's case, tortiously interfering with) Oswald's Agreements with the Individual Defendants and to enjoin all Defendants from using and disclosing Oswald's confidential, proprietary, and trade secret information.

The Sixth Circuit requires a District Court to balance the following four factors to assess the propriety of a preliminary injunction: (1) substantial likelihood of success on the merits, (2) preliminary injunction is necessary to prevent irreparable injury, (3) the injury to the plaintiff outweighs any harm to the nonmovant, and (4) the preliminary injunction would serve the public interest. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (these factors are balanced but are "not prerequisites that must be met."). As Oswald will demonstrate during the December 6, 2022 Hearing, these four factors convincingly weigh in Oswald's favor and the Court should preliminarily enjoin Defendants as follows:

> (a) Defendants Neate, Maitland, Blanc and Loiselle (and any other person or entity acting in aid or concert, or in participation with them) are prohibited from the following: (1) committing further violations of their Agreements with Oswald; (2) retaining, copying, using, or disclosing any Oswald confidential, proprietary or trade secret information, including but not limited to "Confidential Information" as defined in their Agreements with Oswald; (3) directly or indirectly soliciting, servicing, accepting business from, or assisting others in soliciting, servicing, or accepting business from Oswald's "Company Accounts" or "Company Prospects" as defined in their Agreements with Oswald; (4) directly or indirectly soliciting, attempting to solicit, or assisting others in attempting to solicit, any Oswald or Oswald Affiliate employee or independent sales representative to leave or terminate his or her employment or business relationship with Oswald or Oswald Affiliate;

(b) Defendant Hylant (and any other person or entity acting in aid or concert, or in participation with it) is prohibited from the following: (1) accepting any new business from any Oswald customers or prospects who were contacted, solicited, and/or obtained as result of any conduct or activities by Neate, Maitland, Loiselle, or Blanc or others acting in concert with them; (2) retaining, copying, using, or disclosing any Oswald confidential, proprietary or trade secret information; and (3) interfering with Oswald's Agreements with its employees or independent contractors; and

(c) All Defendants (and any person or entity acting in their aid or in concert with them) to search, identify, preserve, segregate, and ultimately return through forensic means all of Oswald's property, keeping no copy.

I. **FACTS SUPPORTING INJUNCTIVE RELIEF**: The undisputable and undisputed evidence at the Hearing will demonstrate the following:

- Oswald requires all its employees, including Individual Defendants Neate, Maitland, Loiselle, and Blanc, to sign Agreements ["Agreements" Pl. Exs. 1, 2, 3, and 4], which contain two (2)-year post-employment restrictions which prohibit the Individual Defendants from (1) soliciting, accepting business from, servicing or assisting anyone to solicit, accept business from or service Oswald Company Accounts or Company Prospects (Paragraph 8) and (2) soliciting, attempting to solicit or assisting anyone in soliciting or attempting to solicit Oswald employees or independent sales representatives to leave Oswald (Paragraph 9). Oswald's Agreements also contain a non-disclosure provision (Paragraph 5) that prohibits unauthorized disclosure and use of Oswald's Confidential Information and requires return of such information upon separation. The Agreements (Paragraph 1) defines Confidential to include Product and Service Information, Account Information, Sales Personnel Information, and other trade secret and proprietary information.

- Like Oswald, Hylant's own agreements require 2-year restrictions on solicitation and accepting business from any of Hylant's customers and employees and contain virtually identical non-disclosure provisions. [See Paragraphs 8, 9, and 10 of Pl. Exs. 7, 9, and 10].

2

- Despite the industry standard (i.e., Hylant's own agreements and policies) and the binding Oswald Agreements, all Defendants engaged in improper solicitation of Oswald customers on May 27, 2022. Those targeted solicitations "thank[ed]" the customer "for contacting Hylant" and asked them to post-date attached paperwork with a June 10, 2022 date. [See Pl. Ex. 14].

- Prior to the May 27 solicitation of Oswald customers, Hylant had no information about these Oswald customers. Despite "thank[ing]" customers for "contacting Hylant," Hylant has no documentary evidence that these customers actually contacted Hylant prior to May 27. [Pl. Ex. 25].

- Importantly, Hylant's template May 27, 2022 emails to Oswald's customers occurred <u>before</u> Hylant made any public announcement that Neate or Maitland joined Hylant. Hylant first made its public announcement on June 8, 2022 – twelve (12) days <u>after</u> these customers supposedly contacted Hylant. In addition, the May 27, 2022 template emails requested that these solicited Oswald customers <u>post-date</u> their Broker of Record Notices ("BORs") to June 10, 2022 (i.e., two days <u>after</u> Hylant's public announcement). [Pl. Exs. 15 and 16].

- After their improper solicitations, Defendants circulated and used customer lists containing Oswald's confidential customer and prospect information—all prohibited by Oswald's Agreements. [Pl. Exs. 17-24]. Defendants continue to possess Oswald's confidential information.

**II.    ARGUMENT SUPPORTING PRELIMINARY INJUNCTION**: "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Tri-County Wholesale Distribs. v. Wine Group, Inc.*, 565 Fed. Appx. 477, 480 (6th Cir. 2012). "Given this limited purpose, a party seeking a preliminary injunction 'is not required to prove his case in full' under the same procedures and evidentiary requirements that would apply at a trial on the merits." *Id*.

### A. Oswald has a Substantial Likelihood of Success on the Merits

Oswald alleges breach of contract, trade secret misappropriation, and tortious interference by Hylant, amongst other claims. In their defense, Defendants argue the impossible – that Hylant had knowledge of these customers, had their non-public contact information, and knew the types of coverages they held (including the carriers), such that all these customers *coincidentally* transferred their accounts from Oswald to Hylant all on the same June 10 day. The evidence simply does not support such a fantastical conclusion. Instead, the evidence demonstrates that Individual Defendants conspired with Hylant to circumvent their obligations and avoid detection of their activities, planning this mass and simultaneous transfer of business by sending numerous identical templated and targeted emails **on May 27, 2022**, that solicited and instructed Oswald's customers **to post-date BORs to June 10, 2022.** These unlawful solicitations have already resulted in the transfer of over 30 Oswald customers to Hylant. If not enjoined, Defendants will continue to gain the benefits of their unlawful activities with the transfer of additional accounts.

#### 1. Breach of Contract

To prove breach of contract, Oswald must show (1) the existence of a binding contract; (2) Plaintiff's performance; (3) breach; and (4) damages." *Hicks v. Bryan Medical Group, Inc.*, 287 F. Supp. 2d 795 (N.D. Ohio 2003); *see also, Prime Props., Ltd. P'ship v. Badah Enters.*, 8th Dist. Cuyahoga No. 99827, 2014-Ohio-206, ¶ 13. As a condition of their employment, Oswald required the Individual Defendants to execute Agreements which contained: confidentiality provisions and two-year post-employment restrictions on soliciting, servicing or accepting business from Oswald's customers or prospects and soliciting Oswald employees.[1]

---

[1] Defendant Neate may attempt to argue that his Oswald Agreement (Pl. Ex. 4) is not in enforceable. However, Oswald will present evidence that Pl. Ex. 4 is Neate's current binding and operative agreement concerning confidentiality and non-solicitation.

4

"In Ohio, a non-compete covenant is enforceable to the extent it is reasonable." *Firstenergy Solutions Corp. v. Flerick*, 521 Fed. Appx. 521, 525 (6th Cir. 2013); citing *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 325 N.E.2d 544, 544, syllabus (Ohio 1975) ("[a] covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is (1) no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public.").

Agreements which are drafted to avoid unfair competition through use of unlawfully obtained trade secrets, confidential and proprietary information are narrowly tailored to protect Oswald's legitimate business interests. *Firstenergy Solutions Corp.* at 528. In addition, protecting customer relationships and customer goodwill after departure of an employee, as well as preventing a former employee from soliciting sales from those customers with which he had a relationship, are reasonable and legitimate business interests to protect with a non-competition agreement. See *AK Steel Corp. v. Miskovich*, 2014 U.S.Dist. LEXIS 197389 (S.D. Ohio Mar. 3, 2014), citing *Nat'l Interstate Ins. Co. v. Perro*, 934 F.Supp.883, 890 (N.D. Ohio 1996). One and two-year restrictive covenants are routinely deemed reasonable and appropriate. *See, e.g.*, *UZ Engineered Prods. Co. v. Midwest Motor Supply Co.,* 147 Ohio App. 3d 382, 2001-Ohio-8779, 770 N.E.2d 1068, 1080 (10th Dist.)[2]; *see also, Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 993 (6th Cir. 2007) (two-year covenant not to compete found reasonable because there is a legitimate business interest in maintaining its ability to "effectively compete" in the market and in protecting customer relationships.). Here, Oswald's contractual restrictions are reasonable given that they do not prohibit the Individual Defendants from working for a competitor. In addition,

---

[2] "[A] two-year noncompetition clause that prohibited former employee from working with a competitor in the same geographic territory was reasonable and based on a legitimate business interest in "limiting…a former employee's ability to take advantage of personal relationships the employee has developed while representing the employer to the employer's established contact,…"

5

Oswald's contractual restrictions are reasonable since each of the Individual Defendants had access to Oswald's confidential information (e.g., customer lists, pricing, marketing strategies, etc.). Hylant can hardly argue unreasonableness when it requires and has enforced virtually identical agreements with its own employees.

Defendants also cannot dispute that they <u>targeted and solicited</u> Oswald's customers and likewise cannot dispute that they <u>serviced and continue to service</u> those Oswald customers that they improperly solicited. In Loiselle's case, she extensively solicited Neate and Maitland to leave Oswald for Hylant in direct violation of her Agreement with Oswald.

### 2. Hylant Tortiously Interfered with Oswald's Agreements.

A claim of tortious interference with contract requires: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 85 (1999), paragraph one of the syllabus. Oswald will demonstrate that Hylant knew or should have known of Oswald's Agreements and intentionally devised a plan to steal Oswald's employees, customers and prospects without having to spend the time and resources to obtain these relationships through fair competition. Indeed, Hylant engaged in the precise conduct that it admonishes and seeks to prohibit from its own competitors and former employees.

### 3. Misappropriation of Trade Secrets

Oswald has alleged a trade secret claim under The Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq*. ("DTSA") and Ohio law, O.R.C. §1333.61 *et seq*. The DTSA and Ohio law provide for injunctive relief to prevent actual or threatened trade secret misappropriation. 18 U.S.C. §1836 (b)(3)(A)(i); O.R.C. §1333.62. For injunctive relief under the DTSA, Oswald "is required to show:

6

(1) the existence of a protectable trade secret; and (2) misappropriation of the trade secret by defendant." *Union Home Mortg. Corp.*, 2020 U.S.Dist. LEXIS 132097, 14-15 (N.D. Ohio Mar. 9, 2020) (court granted injunction without bond where defendant took and possessed customer lists).[3] A trade secret under DTSA has two elements: "(1) the owner thereof has taken reasonable measures to keep such information secret; and (2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Here, the evidence will confirm that Defendants possess and have used Oswald's trade secret information including non-public Oswald employee and customer information such as customer lists, pricing strategies, and customer preferences – all constituting protected trade secrets under federal and Ohio law. *See AK Steel Corp. v. Miskovich*, No. 1:14-cv-174, 2014 U.S. Dist. LEXIS 197389 at *16-17 (S.D. Ohio Mar. 3, 2014); *Merill, Lynch, Pierce, Fennell & Smith, Inc. v. Kramer*, 816 F.Supp. 1242 (N.D. Ohio 1992) (Customer lists are trade secrets); *see also, Prosonic Corp. v. Stafford*, 539 F.Supp.2d 999, 1005-6 (S.D. Ohio 2008) (Business models, bidding practices, pricing strategy, marketing efforts, and customer preferences constitute trade secrets); O.R.C. §1333.61 ("trade secret" is "any business information or plans, financial information or listing of names, addresses, or telephone numbers…").

Oswald took reasonable measures to protect the secrecy of this information by restricting access to sensitive information by, among other practices, utilizing password protection and requiring non-disclosure agreements. Courts have found such measures constitute reasonable

---

[3] To prevail on an OUTSA claim, Oswald must show (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008).

efforts to maintain secrecy. *See, e.g., Dayton Superior Corp. v. Yan*, 2012 U.S. Dist. LEXIS 162041 (S.D. Ohio 2012) at *15. Oswald's trade secrets derive independent economic value by virtue of their secrecy and because Oswald generated, cultivated and expended considerable money, time and resources to gather this information. For example, the evidence will show that after purchasing Hoffman Group, including Neate's "book of business" for a significant amount of money, Oswald invested additional time, money, experience, and resources to assist Neate in cultivating, maintaining, and growing these customers by paying Neate and by paying for Neate's expenses, service personnel, software, equipment, access to company-wide marketing and strategic information, and other resources.

In *The Rightthing, LLC v. Brown*, 2009 U.S. Dist. LEXIS 7464, at *24 (N.D.Ohio Feb. 2, 2009), "consumer sales data," was considered a trade secret because "information was not known outside the business, was protected by password," and that "[k]nowledge of this information would save competitors the cost of development, and would allow them to undercut the plaintiff in the marketplace." *Id.* at *22-23. Further, the immediacy of the job change and the timing of the defendant's conduct led the court to conclude that the plaintiff had a substantial likelihood of success on its trade secret claims. *See Id.* at *24-25. Similarly, Oswald will present ample evidence demonstrating Defendant Hylant's access and use of Oswald's trade secrets on multiple and repeated occasions – information to which Hylant would not otherwise have access but for the Individual Defendants improperly retaining and disclosing it. Further, all Defendants have utilized Oswald's customer information to solicit Oswald's customers and prospects. Defendants Blanc and Loiselle have used their knowledge of Oswald's employees, including those employees' skills, duties, and responsibilities, to target them for solicitation to leave Oswald and join Hylant. Because Oswald can demonstrate substantial likelihood of success on its claims, including the DTSA claim,

the Court can and must issue an injunction to restrain Defendants' unlawful conduct and prevent further actual or threatened trade secret misappropriation.

### B.     Injunctive Relief is Necessary to Prevent Irreparable Injury.

Oswald will demonstrate irreparable injury. Irreparable injury exists if the harm is difficult to calculate (such as a "competitive injury"). *RECO Equip., Inc. v. Wilson,* 2021 U.S. Dist.LEXIS 32413, *12-13 (6th Cir. Oct. 28, 2021), citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511-512 (6th Cir. 1992); *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 279 (6th Cir. 2015) (harm to "goodwill and competitive position…would be hard to compensate"); *Hall v. Edgewood Partners Ins.Ctr.,Inc.*, 878 F.3d 524, 530 (6th Cir. 2017) (loss of goodwill is irreparable).

Irreparable injury also exists in the trade secret context, where the offending competitor may mix profits and savings attributable to the misappropriated information with its own natural profits. *See Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 485 (6th Cir. 2002). In *RECO Equip*, the Court upheld a preliminary injunction finding that Plaintiff demonstrated sufficient irreparable harm because "[b]y stealing the secrets, the defendants could speed up their own process and steal customers… Plus quantifying this competitive advantage alone is almost impossible." *RECO Equip* at *13. Courts typically find irreparable injury due to the potential for lasting and unjust competitive harm resulting from misappropriation. *See Dayton Superior Corp.* at *20-22 (substantial threat of harm exists when a defendant possesses knowledge of a former employer's trade secrets and begins to work with a competitor.).

### C.     Injury To Oswald Outweighs Any Harm To The Defendants or Third Parties.

"Whether others will suffer <u>substantial harm</u> absent an injunction is a fact-based inquiry." *Curtis 1000, Inc. v. Martin*, 197 F.App'x 412, 426 (6th Cir.2006) (emphasis added). "'Others'

9

include 'defendants.'" *Id*. Defendants face no risk of harm from a preliminary injunction which essentially maintains the status quo. The information taken, retained, and otherwise misappropriated belongs to Oswald and Defendants have no justified interest deserving of the Court's protection. Moreover, Oswald does not seek to prevent any of the Individual Defendants from working for Hylant and competing fairly. No other party will be "substantially" harmed by the issuance of the requested injunction.

### D. <u>Injunctive Relief Would Serve the Public Interest.</u>

There is no public interest in trade secret misappropriation, unfair competition, or non-enforcement of contractual agreements. *See, e.g., Dayton Superior Corp.* at *24; *Avery Dennison Corp. v. Kitsonas*, 118 F.Supp.2d 848, 855 (S.D.Ohio 2000) (collectively concluding that the public interest is served by discouraging unfair competition and the misappropriation of trade secrets). Oswald's requested injunction would serve the public interest in contract enforcement, maintaining commercial ethics, and protecting trade secrets.

### E. <u>No Security is Necessary.</u>

This Court has broad discretion over the posting of security, including the discretion to not require security at all if necessary "for purposes of effective justice between the parties." See *Appalacian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins.*, 714 F.3d 424, 432 (6th Cir. 2011); *Static Control Components, Inc. v. Lexmark, Int'l, Inc.* 697 F.3d 3887, 400-01 (6th Cir. 2012). In circumstances such as this, no security is necessary because Oswald simply asks for Defendants to follow the law and has not asked that Hylant terminate or suspend these employees without pay.

Respectfully submitted,

**ZASHIN & RICH CO., L.P.A.**

        *s/ Ami J. Patel*
        Stephen S. Zashin (0064557) ssz@zrlaw.com
        Lisa A. Kainec (0061551) lak@zrlaw.com
        Ami J. Patel (0078201) ajp@zrlaw.com
        Jzinae N. Jackson (0098411) jnj@zrlaw.com
        950 Main Avenue, 4th Floor
        Cleveland, OH 44113
        T: (216) 696-4441 / F: (216) 696-1618

        *Attorneys for Plaintiffs The James B. Oswald Company d/b/a Oswald Companies and JBO Holding Company*

## CERTIFICATE OF COMPLIANCE WITH COURT ORDER

The undersigned certifies that foregoing *Plaintiffs' Pre-Hearing Brief for the December 6, 2022 Preliminary Injunction Hearing,* exclusive of cover page and signature blocks, complies with the ten (10)-page limitation identified in the Court's November 29, 2022 Order [ECF 44].

*s/ Ami J. Patel*
Ami J. Patel (0078201)
*One of the Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on December 2, 2022 by 2:00 pm, the foregoing *Plaintiffs' Pre-Hearing Brief for the December 6, 2022 Preliminary Injunction Hearing* was filed and served to all parties of record via the Court's electronic filing system.

*s/ Ami J. Patel*
Stephen S. Zashin (0064557) ssz@zrlaw.com
Lisa A. Kainec (0061551) lak@zrlaw.com
Ami J. Patel (0078201) ajp@zrlaw.com
Jzinae N. Jackson (0098411) jnj@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441 / F: (216) 696-1618

*Attorneys for Plaintiffs, The James B. Oswald Company d/b/a Oswald Companies and JBO Holding Company*